***********
The Full Commission has reviewed the prior Opinion and Award, based upon the record of the proceedings before Deputy Commissioner Glenn and the briefs and oral argument before the Full Commission. The appealing party has shown good grounds to reconsider the evidence and, upon reconsideration, the Full Commission affirms with significant modifications the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS *Page 2 
1. All parties are properly before the North Carolina Industrial Commission and the Industrial Commission has jurisdiction of the parties and of the subject matter of this case. All the parties are bound by and subject to the North Carolina Workers' Compensation Act. All parties have been correctly designated and there is no question as to the misjoinder or nonjoinder of any party.
2. An employer-employee relationship existed between plaintiff and defendant-employer at all relevant times herein.
3. Builders Mutual Insurance Company was the workers' compensation carrier on risk for defendant-employer at all relevant times herein.
4. Plaintiff's average weekly wages were $871.64 per week, yielding a compensation rate of $581.12 per week.
5. The issues to be decided from the hearing were as follows:
 a) Whether plaintiff's present condition is related to his admittedly compensable injury by accident of July 22, 2003?
 b) If so, what, if any, additional workers' compensation benefits is plaintiff entitled to receive under the North Carolina Workers' Compensation Act?
 c) Whether plaintiff has returned to gainful employment?
 d) If so, when should his compensatory benefits been terminated?
 e) Whether plaintiff was working and receiving wages while he was receiving workers' compensation benefits?
6. The following was stipulated into evidence by the parties at the hearing:
 a) Stipulation #1, plaintiff's exhibits; *Page 3 
 b) Stipulation #2 and #2a, IC Forms, ARCA records, plaintiff's medical records, responses to discovery, investigative reports and payroll records;
 ***********
The pre-trial agreement and any and all other stipulations of the parties are hereby herein incorporated into the evidence of this matter as though they were fully set out herein.
 ***********
Based upon all of the competent evidence of record and the reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff worked for defendant-employer as a manager and his duties included installation of cabinets for defendant-employer's customers.
2. On or about July 22, 2003, plaintiff sustained an admittedly compensable injury by accident while in the course and scope of his employment with defendant-employer, when a cabinet he was installing fell and struck his head. The cabinet weighed approximately 200 pounds.
3. At the time of his injury, plaintiff was working with his son, David Leiner, III. After the accident, plaintiff's son called Ed Silskey, the owner of defendant-employer, and reported the accident, advising Mr. Silskey that plaintiff had been struck in the head by the cabinet.
4. Plaintiff's son noticed that plaintiff seemed dazed immediately after the accident. He thought that plaintiff needed medical attention and took plaintiff to see Dr. Scott A. Light, a chiropractor, whom plaintiff's son knew as a family friend.
5. Dr. Light examined plaintiff and noted uncoordinated eye movements and drowsiness and immediately sent plaintiff to the emergency room at Lake Norman Regional Center for further evaluation and *Page 4 
treatment.
6. The attending physician at the Lake Norman Regional Medical Center emergency room diagnosed plaintiff with a head injury and ordered a CT scan of plaintiff's brain.
7. Following plaintiff's visit to the ER, he continued to experience neck pain and chronic headaches. He returned to Dr. Light for treatment. Dr. Light treated plaintiff with conservative chiropractic treatments. When plaintiff did not improve with the chiropractic treatments, he went to see his primary care doctor, Dr. James McNabb, on August 18, 2003.
8. On August 18, 2003, Dr. McNabb noted that plaintiff was a "middle-aged white male with a very flat affect with hesitant and slightly slurred speech. He is previously known to me and this represents a change." Dr. McNabb also noted that plaintiff was suffering from a severe headache "probably secondary to severe head concussion".
9. Dr. McNabb's record for the August 18, 2003 visit continues, in part, as follows:
 "40-year-old white male presents for evaluation of severe headache and mental status changes. He was in his usual state of good health until 7/22/03 when he was working at his job for Edwards Designs. . . . He describes a severe 7-8/10 sharp constant headache primarily over the vertex but with generalization. The headache has been constantly present since the accident. . . . In addition, he complains of significant constant fatigue, a feeling of disassociation, slow speech, slurred speech . . . He complains of difficulty concentrating and also difficulty with memory. Last week, he had an episode of becoming lost while driving. In fact, he was only about four blocks from his house. . . . Wife calls reporting increased personality changes. . . . I spoke with neurologist, Dr. Andrew Braunstein, who agrees with the diagnosis of traumatic brain injury with post-concussive syndrome. He also believes that David has frontal lobe syndrome."
10. Dr. McNabb referred plaintiff to the Charlotte Institute of Rehabilitation where he was seen and treated by Dr. Braunstein. Dr. Braunstein noted that plaintiff was a 40-year-old right-handed *Page 5 
white male status post closed head injury with loss of consciousness now suffering classic post concussive syndrome. He agreed with Dr. McNabb that plaintiff needed to be out of work for one month and indicated that plaintiff may need to be out longer and his overall recovery may take three to even six months.
11. Dr. McNabb and Dr. Braunstein, placed plaintiff on various medications, including Depakote, DarvocetN-100, Xanax and Zoloft to treat his head injury.
12. When plaintiff did not respond to the treatment, Dr. Braunstein referred plaintiff to Dr. Flora Hammond. Dr. Hammond is board certified in physical medicine and rehabilitation and her practice involves caring for patients with brain injuries, research in the treatment of brain injury, and teaching others how to care for people with brain injuries. Dr. Hammond diagnosed plaintiff's condition as mild, traumatic brain injury with post-concussive syndrome. After her initial examination, Dr. Hammond continued plaintiff out of work.
13. For years, plaintiff has been involved in automobile racing in various capacities. On or about January 11, 2004, plaintiff worked as a crew chief for CDC Racing. Payroll records from CDC Racing indicate that plaintiff received "salary wages" in the amount of $1923.08 each week from January 11, 2004 through February 22, 2004. Records subsequent to February 22, 2004 are unavailable as CDC Racing went out of business.
14. On February 24, 2004, plaintiff executed a Form 90 certifying that he was not employed and that he had not received earnings from work from July 22, 2003 to February 5, 2004.
15. Plaintiff testified that he had a lease agreement with Bobby Gerhart Racing in 2004 for approximately $1,250.00 per month. He further testified that along with his lease, he also does whatever Mr. Gerhart asks him to do. *Page 6 
16. The evidence indicates that in 2005, plaintiff was an active member of the Bobby Gerhart Racing team operating in at least the capacity of a spotter. The duties of a spotter include watching the racetrack from above for accidents, following the race, and following the cars as they travel around the track. Further, the spotter position requires ability to communicate over the radio.
17. Plaintiff's son, David Leiner, III, was also involved with the Bobby Gerhart Racing team. As of the February 9, 2005 hearing of this matter, Mr. Leiner, III testified that he served as a mechanic for Bobby Gerhart Racing.
18. At the August 2005 hearing of this matter, when confronted with information from the Bobby Gerhart Racing website listing "David Leiner" as Crew Chief for the February 12, 2005 Daytona race, plaintiff and his son testified that David Leiner, III, plaintiff's son, was promoted to Crew Chief between the February 9, 2005 hearing and the February 12, 2005 race. David Leiner, III was 18 years old at that time and, as of February 12, 2005 had no Crew Chief experience. Plaintiff was 42 years old and had experience as a Crew Chief.
19. The Bobby Gerhart Racing website records listed plaintiff, not David Leiner, III, as the Crew Chief for Bobby Gerhart Racing. Plaintiff's son, David Leiner, III, worked as one of many crew members for Bobby Gerhart Racing. Subsequent to the hearing, plaintiff acknowledged that he had begun working for Bobby Gerhart Racing as a Crew Chief.
20. Based on the greater weight of the competent evidence of record, the Full Commission does not find plaintiff's testimony concerning his lease arrangement with Bobby Gerhart Racing persuasive. The Full Commission further finds that the greater weight of the evidence shows that plaintiff was Crew Chief for Bobby Gerhart Racing.
21. On March 4, 2004, plaintiff was administered neuropsychological testing by Dr. Patricia *Page 7 
Gross at the Charlotte Institute of Rehabilitation. Dr. Gross found that plaintiff suffered from "Cognitive disorder not otherwise specified secondary to mild brain injury and depression."
22. Plaintiff underwent a functional capacity evaluation (FCE) on March 9, 2004. The FCE indicated that plaintiff was capable of light/medium to heavy work.
23. On March 26, 2004, Defendants filed a Form 28 stating that plaintiff had returned to work for a different employer as of January 5, 2004. Upon receipt of the signed Form 28, defendants stopped benefits as plaintiff had returned to work.
24. Plaintiff underwent an evaluation by Dr. T. Hermanth Rao, a neurologist, on July 28, 2005. Based on the history plaintiff provided to him, Dr. Rao diagnosed plaintiff with a mild traumatic brain injury. Dr. Rao opined that plaintiff's behavior during his examination was inconsistent and "just really didn't make sense." Dr. Rao further opined that plaintiff could have gone back to work as of September 2004. Dr. Rao was of the opinion that plaintiff did not suffer any current brain injury as a result of the July 22, 2003 incident.
25. Following the August 2005 hearing in this matter, at the request of the Commission, plaintiff underwent a neuropsychological evaluation with Dr. Alexander Manning of Health Rehabilitation Psychologists of Charlotte on September 8, 2005. On that date, plaintiff complained of headaches, irritability, balance problems, dizziness, sleep disturbance, and memory/cognitive impairment. Plaintiff underwent additional neuropsychological testing by Dr. Manning which revealed patterns atypical of that expected over two years after traumatic brain injury for which imaging studies, CT scans, and MRI failed to show brain tissue damage. Based on his evaluation of plaintiff, Dr. Manning opined that plaintiff is able to perform a job as a Crew Chief and that plaintiff is not precluded from employment. *Page 8 
26. Plaintiff continues to treat with Dr. Hammond. Dr. Hammond does not know how long the treatment will have to continue but she is seeing him approximately every 6 months to regulate his medications and to see how he is doing otherwise. Dr. Hammond believes that plaintiff will continue to need to take the medications indefinitely with the understanding that some of his medications will need to be adjusted or changed as she has had to do in the pass. Plaintiff's present medications include Lexapro, Amantadine, Midrin, Inderal, Trazodone, Elavil and Ambient CR.
27. Dr. Hammond noted that plaintiff has experienced long term problems with balance impairment, cognitive impairment, headaches, sleep disturbance, sexual dysfunction, decreased sexual desire, depression, irritability, hypertension and inco-ordination of his extremities. She believes that plaintiff can do some work but the question is can he keep any job because of the problems caused by his injury by accident.
28. Dr. Hammond is of the opinion that plaintiff reached maximum medical improvement approximately 2 years following his injury.
29. Defendants submitted approximately 9 hours of video surveillance of plaintiff to Drs. Hammond, Manning and Rao. Dr. Hammond and Dr. Manning indicated that they reviewed the video surveillance and saw nothing on the tapes which was inconsistent with their diagnosis of traumatic brain injury and the tapes would not change their opinions. Dr. Rao had a different opinion but he admitted that there was additional facts that he was not aware of and would defer to plaintiff's treating physicians.
30. On January 8, 2007, plaintiff reported to Dr. Hammond, that as of December 15, 2006, he began working as a racing consultant. Plaintiff also reported to Sylvia Whitmire, a brain rehabilitation counselor Dr. Hammond referred him to, that he had accepted employment with Bobby Gerhart Racing as of December 15, 2006. *Page 9 
31. Plaintiff is currently employed as a Crew Chief for Bobby Gerhart Racing.
32. Defendants sought and obtained criminal charges against plaintiff from the Iredell County District Attorney for alleged workers' compensation fraud. Plaintiff was arrested; however, all criminal charges against plaintiff were eventually dismissed.
33. Defendants have paid and continue to pay all related medical expenses.
34. Plaintiff will require ongoing medical care as a result of his compensable injury.
35. Defendants have not defended this claim without reasonable ground; therefore, plaintiff is not entitled to an award of attorney's fees.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. Plaintiff sustained an admittedly compensable injury by accident which arose out of and in the course of his employment with defendant-employer on July 22, 2003. N.C. Gen. Stat. § 97-2(6).
2. As a result of his compensable injury by accident of July 22, 2003, plaintiff is entitled to temporary total disability compensation from July 22, 2003 until March 26, 2004. N.C. Gen. Stat. § 97-29.
3. As a result of his compensable injury, plaintiff is entitled to have defendants pay for medical expenses incurred or to be incurred in the future for so long as such treatment may reasonably be required to provide relief, effect a cure or lessen the period of disability. N.C. Gen. Stat. § 97-25. *Page 10 
4. Defendants have not defended this claim without reasonable ground so as to demonstrate a stubborn, unfounded litigiousness. Plaintiff is not entitled to an award of attorney's fees. N.C. Gen. Stat. § 97-88.1.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commissioner enters the following:
 AWARD
1. Subject to attorney fees hereinafter approved, defendants shall pay plaintiff total disability benefits at a rate of $581.12 per week beginning July 22, 2003 and continuing through March 26, 2004. All sums that have accrued shall be paid in one lump sum. Defendants shall be given credit for all compensation previously paid.
2. Defendants shall pay for all medical expenses incurred or to be incurred by the plaintiff as a result of the compensable injury when bills for the same have been submitted according to established Industrial Commission procedures, for so long as such evaluations, treatments and examinations may reasonably be required to effect a cure, give relief and/or lessen plaintiff's period of disability. Plaintiff is in need of continuing medical treatment and defendants shall pay for the same.
3. A reasonable attorney's fee in the amount of twenty-five (25%) percent of the compensation approved and awarded for plaintiff is approved and allowed for plaintiff's counsel. The attorney's fee shall be deducted from the compensation due plaintiff and paid directly to plaintiff's attorney.
4. Defendants shall pay the costs of this matter.
This the 6th day of June, 2008. *Page 11 S/___________________ DANNY LEE McDONALD COMMISSIONER
CONCURRING:
 S/___________________ BUCK LATTIMORE COMMISSIONER
 S/___________________ PAMELA T. YOUNG CHAIR *Page 1